Andrew Gerber (AG 0779)
Jordan Fletcher (JF 6161)

KUSHNIRSKY GERBER PLLC
115 West 18th Street, 2nd Floor
New York, NY 10011
(212) 882-1320
*Attorneys for Plaintiff Mitchel Gray*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

| | |
|---|---|
| MITCHEL GRAY, | :    Case No. |
| | :               **ECF CASE** |
|             Plaintiff, | : |
|    v. | : |
| | :    **COMPLAINT** |
| JEFF KOONS, PHILLIPS AUCTIONEERS LLC, | : |
| and JOHN DOE, | : |
| | : |
|          Defendants. | :    **JURY TRIAL DEMANDED** |

———————————————————————

       Plaintiff Mitchel Gray, by his attorneys Kushnirsky Gerber PLLC, for his complaint against defendants Jeff Koons, Phillips Auctioneers LLC ("Phillips"), and John Doe ("Doe") (collectively, "Defendants") alleges as follows:

<u>**NATURE OF THE ACTION**</u>

       1.      This action arises out of the Defendants' unlawful infringement of Mr. Gray's photography.

       2.      Mr. Gray is a commercial photographer based in New York, New York. For more than forty years, Mr. Gray has created fashion, lifestyle, portrait, sports, and fine art images for publications and advertising agencies.

       3.      Jeff Koons is a contemporary American appropriation artist known widely for his reproduction of the images and creative work of others. Because of his work as an appropriation

artist, Mr. Koons has been sued for copyright infringement no fewer than five times in the United States and abroad.

4.      In the mid-1980s, while working on a contract assignment for Grey Advertising, Inc. (now the Grey Global Group) ("Grey Advertising") on behalf of its client Gordon's Dry Gin Co. ("Gordon's"), Mr. Gray created the photograph depicted below (the "Original Work"):



5.      By agreement with Grey Advertising, Mr. Gray granted a temporary, limited-use license to Grey Advertising on behalf of Gordon's and, as was customary in the industry at that time, retained full ownership of the copyright in the Original Work for himself.

6.      Following Mr. Gray's creation of the Original Work, Grey Advertising incorporated it into the advertisement for Gordon's depicted below (the "Gordon's Ad"), which was published in 1986:



7.      Later that year, as part of his 1986 series "Luxury and Degradation," Mr. Koons reproduced the Original Work in its entirety in his painting *I Could Go For Something Gordon's* (the "Infringing Work"):



8.      Despite the fact that Mr. Koons reproduced a near-identical copy of the Original Work, Mr. Koons never contacted Mr. Gray or his agent, never attempted to obtain Mr. Gray's consent, and never provided Mr. Gray with compensation or credit for the use of the Original Work.  Indeed, in sworn deposition testimony given in *Rogers v. Koons*, a copyright infringement lawsuit filed against him in 1989, Mr. Koons stated that he did not seek permission to use any of the liquor advertisements featured in the "Luxury and Degradation" series.

9.      Mr. Koons produced two editions and one artist's proof ("Artist's Proof") of the Infringing Work.

10.     In February 2008, defendant Phillips, one of the world's leading auction houses, orchestrated and profited from the sale via auction of the Artist's Proof (the "2008 Auction"). Phillips undertook the auction on behalf of as-yet-unidentified defendant Doe, the painting's then-owner and seller.  The Artist's Proof sold for approximately $2.04 million in the 2008 Auction, whereby Doe and Phillips each earned substantial profits.  Neither Phillips nor Doe ever obtained Mr. Gray's consent to publicly display, distribute, sell, or profit from a painting containing a near-exact reproduction of the Original Work.

11.     Furthermore, Phillips has displayed the Infringing Work on its website without Mr. Gray's permission since the 2008 Auction in order to market its brand and promote the auction sale.  In fact, as of the date of this lawsuit, Phillips continues to display the Infringing Work on its website, despite having been notified of its unlawful infringement at least as early as September 2015.

12.     Between 1986 and 2014, editions of the Infringing Work were only occasionally displayed publicly, appearing in museums and galleries a limited number of times. Consequently, Mr. Gray did not discover the existence of the Infringing Work – or the

4

Defendants' unlawful infringement – until July 2015.

13.     Mr. Gray asserts claims for copyright infringement under the United States Copyright Act, 17 U.S.C. §101, *et seq*. (the "Copyright Act") against Mr. Koons, Phillips, and Doe.  Mr. Gray seeks damages, injunctive relief, and recovery of his costs and attorneys' fees.

14.      Additionally, as part of this requested relief, Mr. Gray seeks a court order directing Mr. Koons to contact all current owners of the editions of the Infringing Work and the Artist's Proof and inform them that the Infringing Work infringes Mr. Gray's copyright in the Original Work and therefore may not be lawfully sold, transferred, or publicly displayed.

## JURISDICTION AND VENUE

15.     This is an action for copyright infringement under the Copyright Act.  The Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338.

16.     The Court has personal jurisdiction over Mr. Koons pursuant to N.Y. C.P.L.R. §§ 301 and 302.  Mr. Koons resides and is domiciled in New York and does continuous and systematic business in New York and in this District.  Mr. Koons has also transacted business in New York and has contracted to supply goods or services in New York in connection with the matters giving rise to this lawsuit.  He also has committed acts inside and outside of New York that caused injury to plaintiff within New York; regularly does or solicits business in New York; derives substantial revenue from goods used or services rendered in New York; expected or reasonably should have expected his infringing conduct to have consequences in New York; and derives substantial revenue from interstate commerce.

17.     The Court has personal jurisdiction over Phillips pursuant to N.Y. C.P.L.R. §§ 301 and 302.  Phillips is headquartered in New York and in this District and does continuous and systematic business here.  Phillips also transacts business in New York and contracted to provide

goods and services in New York in connection with the matters giving rise to the lawsuit.  It also has committed acts inside and outside of New York that caused injury to plaintiff within New York; regularly does or solicits business in New York; derives substantial revenue from goods used or services rendered in New York; expected or reasonably should have expected its infringing conduct to have consequences in New York; and derives substantial revenue from interstate commerce.

18.     Upon information and belief, the court has personal jurisdiction over Doe pursuant to N.Y. C.P.L.R. §§ 301 and 302.  Doe's identity and whereabouts are in the possession and control of defendant Phillips.  The Complaint will be amended, if appropriate, to state the full basis for the Court's jurisdiction over defendant Doe when such information becomes known to plaintiff.

19.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400, because the Defendants do business, may be found, and are subject to personal jurisdiction here. Further, a substantial part of the events giving rise to the claims at issue in this action occurred in this District.

## PARTIES

20.     Plaintiff Mitchel Gray is an individual who resides in New York, New York.  Mr. Gray owns and has registered the copyright for the Original Work at issue in this action.

21.     Defendant Jeff Koons is an individual who resides, maintains his principal place of business, and conducts significant business in New York, New York.

22.     Defendant Phillips is a Delaware limited liability company with a principal place of business in New York, New York.

23.     Defendant Doe is an as-yet-unidentified individual or entity.  Doe's identity and

6

location are in the possession and control of defendant Phillips.  The Complaint will be amended, if appropriate, to include Doe's name and location when such information becomes known to plaintiff.

## FACTUAL BACKGROUND

**A.**   **Photographer Mitchel Gray and the Original Work**

24.    Mr. Gray is a commercial photographer based in New York, New York.  For more than forty years, Mr. Gray has created fashion, lifestyle, portrait, sports, and fine art images for publications and advertising agencies.

25.    During the 1980s, Mr. Gray worked regularly with Grey Advertising to create advertising images for Grey Advertising's corporate clients.

26.    Mr. Gray worked as an independent contractor on his Grey Advertising assignments, and Mr. Gray generally granted limited-use, limited-duration licenses for the images that he created.  These licenses only permitted Grey Advertising's clients to display Mr. Gray's images in their advertisements for a limited amount of time, in specific locations, and in specifically designated media.

27.    At least as early as 1986, Grey Advertising contracted with Mr. Gray to create an image for its client Gordon's.  This project resulted in the Original Work.

28.    As was his custom and practice, Mr. Gray granted only a limited-use, limited-duration license for the use of the Original Work to Grey Advertising on behalf of Gordon's, and he retained all other rights and ownership of the full copyright in the Original Work for himself.

29.    Subsequently, Grey Advertising incorporated the entire Original Work into the Gordon's Ad.  The Gordon's Ad was published in 1986.

30.     Following the expiration of the license grant, all licensed rights reverted to Mr. Gray.  At no time has Mr. Gray ever transferred those rights to any third party.

31.     Mr. Gray has registered the copyright in the Original Work with the United States Copyright Office.  A copy of the Certificate of Registration is attached hereto as **Exhibit A**.

**B.      Defendant Jeff Koons and the Infringing Work**

32.     Defendant Mr. Koons is one of the most controversial living contemporary artists in the world.

33.     Mr. Koons is known widely as an "appropriation artist."  As described by United States District Judge Louis L. Stanton in a 2007 opinion in *Blanch v. Koons*, a lawsuit for copyright infringement against Mr. Koons, "[a]ppropriation artists take other artists' work and use it in their own art, appropriating and incorporating it in their own product with or without changes.  Because of this appropriation, often . . . done without giving credit to the original artist, the appropriation artists can expect that their work may attract lawsuits."[1]

34.     Indeed, because of his work as an appropriation artist, Mr. Koons has been sued for copyright infringement no fewer than five times in the United States and abroad.

35.     United States Circuit Judge Robert A. Katzmann observed in a 2006 opinion that, in the late 1980s, Mr. Koons "slavishly recreated a copyrighted work in a different medium without any objective indicia of transforming it or commenting on the copyrighted work."[2]

36.     In 1986, following the publication of the Gordon's Ad, Mr. Koons reproduced a nearly identical copy of the Gordon's Ad in the Infringing Work, which he titled *I Could Go For Something Gordon's*.  The Infringing Work depicts the Original Work nearly unchanged and in its entirety.

---

[1] *Blanch v. Koons*, 485 F. Supp. 2d 516, 518 (S.D.N.Y. 2007) (LLS).
[2] *Blanch v. Koons*, 467 F.3d 244, 262 (2d Cir. 2006) (Katzmann, J., concurring) (referring to the incident at the center of the lawsuit *Rogers v. Koons*, 89 Civ. 6707 (S.D.N.Y.) (CSH)).

37.     At no time did Mr. Koons contact Mr. Gray to request permission to use the Original Work, credit Mr. Gray for the use of the Original Work in the Infringing Work, or pay Mr. Gray a license fee for his use of the Original Work.

38.     Mr. Gray never granted Mr. Koons permission to use the Original Work in the Infringing Work, nor did the license Mr. Gray granted to Grey Advertising on behalf of Gordon's permit Mr. Koons to use, copy, or profit from a copy of the Original Work.

39.     The Infringing Work formed part of Mr. Koons' 1986 series entitled "Luxury and Degradation," which included reproductions of a number of liquor advertisements of the period. In sworn deposition testimony given in *Rogers v. Koons*, a copyright infringement lawsuit filed against him in 1989, Mr. Koons stated that he never sought permission to use any of the liquor advertisements featured in the "Luxury and Degradation" series.[3]

40.     At the time that he produced the Infringing Work, Mr. Koons had significant experience in the business world and as an appropriation artist.  Mr. Koons therefore knew, or should have known, that he was required to obtain an artist's permission before he could lawfully copy a work by that artist.  Consequently, Mr. Koons knew, or should have known, that he was required to obtain Mr. Gray's permission before reproducing the Original Work in the Infringing Work.

41.     In an essay contained in the 2014 Whitney Museum of American Art publication *Jeff Koons: A Retrospective*, author Rachel Kushner wrote, "Koons' liquor ads [in "Luxury and Degradation"] are not a commentary, nor are they ironic appropriation.  They are a straight appropriation."[4]  Mr. Koons has described his own work in the same terms.  In a television interview filmed in or around September 2008, Mr. Koons stated, "there's always a lot of

---

[3] *See* Vilis R. Inde, *Art in the Courtroom* 17-18 (1998).
[4] Rachel Kushner, "Happy Hour, or How I Learned To Stop Worrying and Love the Message," *in* Scott Rothkopf, *Jeff Koons: A Retrospective* 226 (2014).

confusion with my work where people think I am making a critique, and I'm not."[5]

42.    Mr. Koons created two editions and one Artist's Proof of the Infringing Work. Upon information and belief, between 1986 and 1988 Mr. Koons sold both editions and the Artist's Proof and profited from the sales therefrom.

**C.    Defendant Doe and the Artist's Proof**

43.    In 1988, Mr. Koons sold the Artist's Proof for $25,000 via the New York-based Sonnabend Gallery ("Sonnabend"), which represented Mr. Koons at the time.  Based on provenance information contained on defendant Phillips' website, the Collection of Gerald S. Elliott, Chicago (the "Elliot Collection") was the buyer in that transaction.

44.    Upon information and belief, and based upon provenance information contained on Phillips's website, sometime prior to 2008, defendant Doe bought the Artist's Proof from the Elliott Collection.

**D.    Defendant Phillips**

45.    Defendant Phillips is an international auction house that describes itself as "the destination for international collectors to buy and sell the world's most important contemporary works of art."  Phillips' website states that "Phillips" is "[h]eadquartered in New York and London, with offices throughout the world."

46.    Founded in 1796, Phillips has undergone a series of name and ownership changes over the last two hundred years.  In 2008, Phillips' New York headquarters was registered in the United States under the name Phillips, de Pury & Co., LLC and operated as the parent entity of the London headquarters ("Phillips (UK)").  At that time, Phillips (UK) was a registered United Kingdom entity named Phillips, de Pury & Co., Ltd.  In 2013, Phillips was renamed Phillips

---

[5] AFP News Agency, "Jeff Koons brings pop art revolution to Versailles," at 0:19-0:24 (uploaded Sep. 16, 2008), *available at* http://www.youtube.com/watch?v=-Jl_a5UQjUc.

Auctioneers LLC.  Phillips (UK) has since been renamed Phillips Auctioneers, Ltd.

47.     Despite a formalistic separation, Phillips and Phillips (UK) (together, the "Phillips Entities") hold themselves out to the public and have branded themselves as a single institution called "Phillips."  The Phillips Entities share a website (the "Phillips Website"), a Facebook page, an Instagram account, a Twitter account, and, as described above, brand themselves as a single global institution with two "headquarters" and multiple other offices around the world. The Phillips Website posts information about artwork for sale at all Phillips locations and maintains a single public calendar for all upcoming auctions around the world.  The Phillips Website also publishes information about artwork sold at past auctions at all Phillips locations.

48.     The Phillips Entities also share a management team that is split between the New York and London headquarters.  According to the Phillips Website, the Phillips Entities' Chairman and Chief Executive Officer, President, Chief Financial Officer, Chief People Officer, and Associate General Counsel are all based in New York.  Conversely, the Phillips Entities' Chief of Staff, International Business Director (Contemporary Art), Creative Director, and Worldwide General Counsel are all based in London.

49.     On a Phillips Website webpage entitled "Selling," the Phillips Entities inform potential sellers, "When and Where to Sell: Phillips conducts auctions in each collecting category in New York and London throughout the year.  A specialist will discuss with you the most appropriate season and venue to ensure the strongest bidding for the property." Accordingly, the location of any given auction held by the Phillips Entities bears no relationship to the legal entity in charge of organizing, or directly benefitting from, that particular auction sale.  Rather, the Phillips Entities operate as a single institution in determining which location is most advantageous for hosting a particular auction.

50.     Upon information and belief, and based on the deep interconnectedness of the Phillips Entities' management, operations, and marketing, the Phillips Entities share records and information relating to their auctions, and they collaborate with each other seamlessly in promoting auctions, producing auctions, and transferring auctioned artwork internationally from sellers to auction sites to buyers.

51.     Consequently, the Phillips Entities maintain an actual and apparent partnership in producing and conducting their auctions, and, on information and belief, they have the authority to bind each other in transactions with third parties and exercise joint control over auctioned artwork.

**E.     The 2008 Auction**

52.     In or about 2008, defendant Doe contracted with the Phillips Entities whereby the Phillips Entities agreed to orchestrate an auction of the Artist's proof on Doe's behalf.

53.     On February 28, 2008, the Artist's Proof sold at the 2008 Auction, hosted at the Phillips Entities' London location, for GBP 1,028,500 (approximately $2.04 million, based on the exchange rate at that time).  Doe earned a substantial profit from the 2008 Auction, and the Phillips Entities earned a substantial commission.

54.     The Phillips Entities maintained an actual and/or apparent partnership with each other and cooperated in organizing and executing the 2008 Auction.  Additionally, the Phillips Entities cooperated in promoting and marketing the 2008 Auction around the world – including in the United States and New York.  This promotion and marketing included the physical and online public display of the Artist's Proof before, during, and after the auction.

55.     Indeed, as of the date of this filing, the Phillips Website still features a webpage promoting the 2008 Auction and displaying an image of the Artist's Proof.  A screenshot of that webpage, captured on December 8, 2015, is attached hereto as **Exhibit B**.

56.     During the production of the 2008 Auction, Phillips exercised control over the infringing Artist's Proof on behalf of defendant Doe, and Phillips participated in, directed, supervised, controlled, approved of, and/or benefitted from the public display, distribution and sale of the Artist's Proof.

57.     Phillips also materially contributed to, facilitated, induced, and was otherwise responsible for the public display, distribution, and sale of the Artist's Proof by Doe.

58.     The Artist's Proof is currently owned by New York City residents Allison and Warren Kanders.  Upon information and belief, Mrs. and Mr. Kanders purchased the Artist's Proof at the 2008 Auction, and Phillips facilitated the transfer and shipment of the painting from London to the Kanders' then-residence in Connecticut.

59.     At no time did Phillips seek or receive permission from Mr. Gray to promote, display, distribute, facilitate the sale of, publish an image of, or profit from the sale of a painting containing a near-exact reproduction of the Original Work.

60.     At no time did Doe seek or receive permission from Mr. Gray to distribute, sell, publicly display, or earn a profit from the sale of a painting containing a near-exact reproduction of the Original Work.

61.     At the time of the 2008 Auction, Phillips knew that Mr. Koons had been sued for copyright infringement at least four times.  Phillips also knew that, as an appropriation artist, Mr. Koons often incorporated the work of other artists into his own work without seeking permission or providing credit.  Phillips therefore knew, or in the exercise of reasonable diligence should

have known, that a substantial possibility existed that the Infringing Work infringed the exclusive rights of another artist.

62.     Upon information and belief, at the time of the 2008 Auction, Doe knew that, as an appropriation artist, Mr. Koons often incorporated the work of other artists into his own work without seeking permission or providing credit.  Doe therefore knew, or in the exercise of reasonable diligence should have known, that a substantial possibility existed that the Infringing Work infringed the exclusive rights of another artist.

63.     Both Phillips and Doe profited from the 2008 Auction of the Artist's Proof. Phillips continues to profit from its online public display of the Infringing Work and its promotion of the 2008 Auction on the Phillips Website.

**E.      Mr. Koons and Phillips Have Failed to Address their Unlawful Infringement**

64.     Mr. Gray first discovered the existence of the Infringing Work – and all Defendants' infringements of the Original Work – in July 2015.

65.     On September 14, 2015, counsel for Mr. Gray contacted Mr. Koons and Phillips by letter regarding their unlawful infringements of the Original Work.  Counsel for Mr. Gray also requested that Phillips disclose the identity and last known address of defendant Doe. Phillips has refused to reveal the identity of defendant Doe, and it has continued to display the Artist's Proof on the Phillips Website, in continued violation of Mr. Gray's rights.  Mr. Koons has also refused to address his past unlawful conduct.

66.     The Defendants' infringements of Mr. Gray's work have been willful, and the Defendants have profited unjustly from their willful infringement.

67.     Mr. Gray has suffered and continues to suffer damages, including the deprivation of license fees for the use and sale of the Original Work, as a result of the Defendants' unlawful conduct.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT - 17 U.S.C. § 501, *et seq.*
### (Against Defendant Jeff Koons)

68.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 67 above, and incorporates them herein by this reference.

69.     Plaintiff Mitchel Gray is the legal owner of all right, title, and interest in the Original Work.  Mr. Gray has registered the copyright to this work.

70.     Defendant Jeff Koons copied, reproduced, distributed, adapted, publicly displayed, and sold a work derived from the Original Work without the consent, permission, or authority of Mr. Gray.

71.     Mr. Koons' conduct constitutes infringement of Mr. Gray's copyright and exclusive rights in violation of sections 106 and 501 of the Copyright Act.

72.     Mr. Koons' acts of infringement were willful, intentional, purposeful, and in reckless disregard of, and with indifference to the rights of plaintiff.

73.     As a result of Mr. Koons' infringement, Mr. Gray suffered and will continue to suffer damages.

74.     Mr. Koons profited unlawfully as a result of his infringement of the Original Work.

75.     Mr. Gray is entitled to his actual damages and Mr. Koons' profits related to the infringement, pursuant to 17 U.S.C. § 504.

76.     Mr. Gray is entitled to injunctive relief prohibiting further infringement by Mr. Koons and others, pursuant to 17 U.S.C. § 502.

**SECOND CLAIM FOR RELIEF**
**COPYRIGHT INFRINGEMENT – 17 U.S.C. § 501, *et seq.***
**(Direct, Contributory, and Joint Tortfeasor Liability)**
**(Against Defendant Phillips Auctioneers LLC)**

77.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 76 above, and incorporates them herein by this reference.

78.     Plaintiff Mitchel Gray is the legal owner of all right, title, and interest in the Original Work.  Mr. Gray has registered the copyright to this work.

79.     Defendant Phillips copied, reproduced, distributed, publicly displayed, and facilitated the sale of a work derived from the Original Work without the consent, permission, or authority of Mr. Gray.

80.     As of the date of this filing, defendant Phillips has continued to display publicly an image of the Infringing Work on the Phillips Website.

81.     At all relevant times, defendant Phillips maintained and continues to maintain an actual and apparent partnership with Phillips (UK), had the authority to bind Phillips (UK) in transactions with third parties, and/or exercised joint control over the infringing Artist's Proof.

82.     Defendant Phillips participated in, directed, supervised, controlled, approved of, and/or benefitted from the 2008 Auction of the Artist's Proof, in collaboration with Phillips (UK) and on behalf of Doe.

83.     In addition to its own acts of infringement, defendant Phillips acted as a joint tortfeasor with Phillips (UK) with respect to the infringing 2008 Auction.

84.     In addition to its own acts of infringement, defendant Phillips acted as a joint tortfeasor with defendant Doe with respect to the infringing 2008 Auction.

85.     Defendant Phillips materially contributed to, facilitated, induced, and was otherwise responsible for the sale, distribution, and public display of the Artist's Proof by defendant Doe, in connection with the 2008 Auction.

86.     Phillips' conduct constitutes direct and contributory infringement of Mr. Gray's copyright and exclusive rights in violation of sections 106 and 501 of the Copyright Act.

87.     Phillips is liable for infringement both individually and as a joint tortfeasor with Phillips (UK) and Doe.

88.     Phillips' acts of infringement have been willful, intentional, purposeful, and in reckless disregard of, and with indifference to the rights of Mr. Gray.

89.     As a result of Phillips' infringement, Mr. Gray has suffered and will continue to suffer damages.

90.     Defendant Phillips has profited unlawfully as a result of its infringement of the Original Work.

91.     Mr. Gray is entitled to his actual damages and Phillips' profits related to the infringement, pursuant to 17 U.S.C. § 504.

92.     Mr. Gray is entitled to injunctive relief prohibiting further infringement by Phillips and others, pursuant to 17 U.S.C. § 502.

### THIRD CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT - 17 U.S.C. § 501, *et seq.*
### (Direct and Joint Tortfeasor Liability)
### (Against Defendant John Doe)

93.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 92 above, and incorporates them herein by this reference.

94.     Plaintiff Mitchel Gray is the legal owner of all right, title, and interest in the Original Work.  Mr. Gray has registered the copyright to this work.

95.     Defendant John Doe has publicly displayed, distributed, and sold a work derived from and containing a near-identical reproduction of the Original Work without the consent, permission, or authority of plaintiff.

96.     Defendant Doe's conduct constitutes infringement of Mr. Gray's copyright and exclusive rights in violation of sections 106 and 501 of the Copyright Act.

97.     Defendant Doe also participated in, directed, supervised, controlled, approved of, and/or benefitted from the 2008 Auction of the Artist's Proof by Phillips.

98.     In addition to its own acts of infringement, Doe acted as a joint tortfeasor with Phillips and Phillips (UK) with respect to the infringing 2008 Auction.

99.     Doe is liable for infringement both individually and as a joint tortfeasor.

100.     Doe's acts of infringement have been willful, intentional, purposeful, and in reckless disregard of and with indifference to the rights of Mr. Gray.

101.     As a result of Doe's infringement, Mr. Gray has suffered and will continue to suffer damages.

102.     Doe has profited unlawfully as a result of his infringement of the Original Work.

103.     Mr. Gray is entitled to his actual damages and Doe's profits related to the infringement, pursuant to 17 U.S.C. § 504.

**WHEREFORE**, plaintiff demands judgment as follows:

1.     Awarding plaintiff his actual damages and defendant Jeff Koons' infringement-related profits pursuant to 17 U.S.C. § 504;

2.     Awarding plaintiff his actual damages and defendant Phillips Auctioneers LLC's infringement-related profits pursuant to 17 U.S.C. § 504;

3.      Awarding plaintiff his actual damages and defendant John Doe's infringement-related profits pursuant to 17 U.S.C. § 504;

4.      Granting an injunction that permanently restrains and enjoins Mr. Koons and all those persons or entities in active concern or participation with him from copying, reproducing, distributing, adapting, and/or publicly displaying any works that infringe the Original Work;

5.      Granting an injunction (i) directing Mr. Koons to deliver to plaintiff's counsel any and all articles in his possession, custody, or control that infringe plaintiff's copyright in the Original Work and any versions or copies of the Infringing Work; and (ii) to the extent that anything coming within the foregoing is in the marketplace unsold, having been placed there by Mr. Koons or anyone acting on Mr. Koons' behalf, directing Mr. Koons to recall such items and deliver them to plaintiff's counsel;

6.      Granting an injunction directing Mr. Koons to contact all current owners of the editions of the Infringing Work and the Artist's Proof and inform them that the Infringing Work infringes Mr. Gray's copyright in the Original Work and therefore may not be lawfully sold, distributed, or publicly displayed;

7.      Granting an injunction that permanently restrains and enjoins Phillips and all those persons or entities in active concern or participation with it from publicly displaying the Infringing Work;

8.      Awarding plaintiff punitive damages based on the Defendants' willful and deliberate conduct;

9.      Awarding plaintiff costs, attorneys' fees, and expenses to the full extent provided by the U.S. Copyright Act;

10.     Awarding plaintiff interest, including prejudgment interest, on the foregoing sums; and

11.     Awarding plaintiff such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        December 14, 2015

                        Respectfully Submitted,

                        KUSHNIRSKY GERBER PLLC


                By: _____/s/ Andrew Gerber_____
                        Andrew Gerber (AG 0779)
                        Jordan Fletcher (JF 6161)
                        andrew@kgfirm.com
                        jordan@kgfirm.com
                        115 West 18th Street, 2nd Floor
                        New York, NY 10011
                        (212) 882-1320

                        *Attorneys for Plaintiff Mitchel Gray*

# EXHIBIT A

## (Copyright Registration)

## Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## VA 1-966-685

**Effective Date of Registration:**
August 17, 2015

**Title** _____

Title of Work:  Gordon's Gin by Mitchel Gray

**Completion/Publication** _____

Year of Completion:  1986
Date of 1st Publication:  June 01, 1986
Nation of 1st Publication:  United States

**Author** _____

- Author:  Mitchel Robert Gray
Author Created:  photograph
Citizen of:  United States
Domiciled in:  United States
Year Born:  ███

**Copyright Claimant** _____

Copyright Claimant:  Mitchel Robert Gray ███████████████

**Rights and Permissions** _____

Name:  Mitchel Robert Gray
Email:
Telephone:  ████████████
Alt. Telephone:

**Certification** _____

Name:  Mitchel Gray
Date:  August 17, 2015

Correspondence:  Yes

Page 1 of 1

# EXHIBIT B

**(Phillips Website
Screenshot Captured on December 8, 2015)**

